UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

WILLIAM M. HOFFHIENS,
CAMILLIA HOFFHIENS

Chapter 7
Case No. 18-55902-mar
Hon. Mark A. Randon

Debtors.
_____/

## AFFIDAVIT OF WILLIAM AND CAMILLIA HOFFHIENS

NOW COMES William and Camillia Hoffhiens, Debtors in the above referenced Chapter 7 Bankruptcy case, who state the following:

1. We, William M. Hoffhiens, and Camillia Hoffhiens, filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code, on November 27, 2018.

### 6650 East 8 Mile Road Detroit, MI 48234

2. From 2000 to 2018 William owned and operated Downriver Automotive Group LLC, an automotive repair shop.

3. Downriver Automotive Group LLC was located at 6650 East 8 Mile Road in Detroit, 48234, a property which we, William and Camillia owned.

4. In recent years, our business and personal health have fallen upon hard times; In 2008, I William, suffered a pulmonary edema, which required open heart surgery. In 2014, I became ill and was hospitalized for an extended period of time. I developed severe sepsis, affecting the functioning of my major organs from which I never fully emotionally recovered. In 2015 I entered the hospital to be treated for a kidney stone which quickly turned into kidney failure. Once again, I developed severe sepsis, this time being placed on life support. While I eventually recovered sufficiently to return home, I was too weak and too mentally distraught to

{00078551.DOCX 3 }

manage the day to day operations of Downriver Automotive Group.

5. I, Camillia, took over managing the day to day operations at Downriver Automotive Group. Although I was managing the shop, I was primarily concerned with William's health, and our mounting medical bills.

6. With the increasing medical bills we were faced with, we became delinquent on many of our business obligations, including property tax and sales withholding tax. We neglected to care for the property simply because we did not have the funds to maintain it.

7. In 2017 we were approached by interested buyers who desired to purchase the property at which Downriver Automotive Group was operating.

8. In light of the significant medical and financial issues we were facing, we felt it was in our very best interest to sell the property, and close the business.

9. In connection with the sale of 6650 East 8 Mile Road, I was offered a job as a sales clerk by the buyer of the property to work at his new business establishment.

10. At the time that the purchase of 6650 East 8 Mile Road was proposed, PNC held a first lien in the approximate amount of $131,533.03; the Wayne County Treasurer held a second lien for delinquent property taxes in excess of $58,000.00.

11. Due to the poor condition of the property, 6650 East 8 Mile Road was not worth the full amount of the mortgage owing against it to PNC. As a result, PNC agreed to accept $80,000.00 on its loan at closing, extinguishing the balance due and owing on the mortgage. (A copy of the letter evincing this loan balance and agreement has been sent to the Trustee).

12. The purchaser paid a total of $141,220.15, which covered all closing costs including pro-rated city and county taxes, settlement charges, payoff of the loan owing to PNC,

{00078551.DOCX 3 }

payoff of the delinquent tax owing to the Wayne County Treasurer, commercial closing fees, owners' title insurance, recording and wiring fees, tax transfer stamps, and water escrow. (A complete copy of the closing documents associated with the sale has been sent to the Trustee.)

13. In order to close, we, William and Camillia Hoffhiens, the sellers, had to offer a concession of $3,132.08 on the purchase price following completion of the title search, and accounting of all payoffs up to the date of closing.

14. We received no proceeds from the sale of this property at closing, which was sold for fair market value in March, 2018.

15. A little more than a month after closing, we received a check in the amount of $5,285.19 from the title company for the $1,000.00 held for water escrow, as well as a small amount representing overpayment on city property tax. We used this money to catch up on our household and medical bills.

### 19370 Mulligan Creek Rd. Bearinger Twp, MI 49759

16. In 2015 we fell delinquent on our mortgage owing to Financial Freedom Loans on our previously owned property located at 19370 Mulligan Creek Rd. Bearinger Twp., MI 49759.

17. The delinquency was due to our significant financial hardships brought on by William's health issues.

18. At that time we were indebted to PNC bank for numerous obligations; pursuant to a promissory note executed on June 15, 2006; pursuant to a fixed rate consumer note and security agreement dated May 22, 2006; pursuant to a consumer line of credit; and pursuant to two business credit cards.

19. These loans, lines of credit, and credit cards were taken out in connection with

William's operation of the business. The total amount of all loans was approximately $210,000.00.

20. I, Camillia, embarked upon discussions with PNC Bank in the fall of 2015, in an effort to reach some type of forbearance agreement due to the financial and health stress we were dealing with.

21. In December 2015 PNC offered us a forbearance agreement (the "Forbearance") which would serve to consolidate all of the existing lines of credit and loans owing to date under the terms of one, modified security agreement, with a new negotiated repayment term. Under the terms of the Forbearance, PNC agreed to accept a discounted principal in the amount of $176,400.00, if we were able to adhere to all of the terms contained in the Forbearance. (A copy of the Forbearance Agreement has been sent to the Trustee).

22. In consideration of granting the Forbearance, PNC required that we pledge additional collateral consisting of our property located at 19370 Mulligan Creek Rd. This collateral was pledged in connection with the execution of the Forbearance, and was granted in addition to all business assets which were previously pledged as collateral for the existing loans.

23. In connection with the execution of the Forbearance, PNC consolidated all of our previously incurred business lines of credit, loans, and business credit cards into the form of a future advance mortgage against the property located at 19370 Mulligan Creek Rd.

24. PNC specifically acknowledged that this new lien against the property located at 19370 Mulligan Creek Rd. was a junior lien, second to our first mortgage in favor of Financial Freedom Loans, Inc.

25. The future advance mortgage in favor of PNC against the property located at

{00078551.DOCX 3 }

19370 Mulligan Creek Rd. was executed on January 6, 2016, and recorded on January 21, 2016, in the Presque Isle County Register of Deeds, Liber 573, Page 599. (A copy of the recorded mortgage has been sent to the Trustee).

26. We continued to suffer financial hardships due to William's health coupled with a steady decline in business.

27. I, Camillia, worked hard at attempting to negotiate a similar forbearance with our first mortgage on the property located at 19370 Mulligan Creek Rd., to no avail.

28. In the fall of 2016 Financial Freedom Loans, Inc, also known as Sapient Providence LLC, hired Trott Law to commence foreclosure proceedings.

29. In connection with the foreclosure action, we received correspondence from Trott Law dated September 9, 2016, which states the following: Our title work indicates PNC Bank, National Association holds a junior lien, in the original amount of $200,000.00, recorded on January 21, 2016 in Liber 573 on Page 599. As you are aware, this lien will be eliminated upon completion of foreclosure." (A copy of the Trott Law correspondence has been sent to the Trustee).

30. On October 14, 2016, the property located at 19370 Mulligan Creek Rd. was foreclosed by Sheriffs Deed in favor of William Blaker, who bid $130,741.99. (A copy of the Sheriffs Deed has been sent to the Trustee).

31. We did not then, and do not now, have any connection to William Blaker.

32. Shortly thereafter we were approached by Michael Novak who represented to us that he was an attorney and real estate developer desirous of our former property.

33. We did not then, and do not now, have any connection to Michael Novak.

{00078551.DOCX 3 }

18-55902-mar    Doc 20    Filed 12/28/18    Entered 12/28/18 11:20:08    Page 5 of 9

34. Mr. Novak aggressively pursued purchasing our redemption right in the property located at 19370 Mulligan Creek Rd.

35. Mr. Novak drafted an 'Agreement to Purchase Real Estate,' and urged us to sign this document at our earliest convenience. (A copy of the Agreement to Purchase Real Estate has been sent to the Trustee).

36. As consideration for executing Mr. Novak's self-prepared 'Agreement to Purchase Real Estate,' Mr. Novak agreed to pay the redemption amount plus an additional two thousand dollars at closing.

37. We were not represented by an attorney in connection with this series of transactions, as we could not afford to hire counsel.

38. I, Camillia, was dealing with my sick husband, while struggling to maintain the operation of our automotive repair business.

39. I viewed the promise of $2,000.00 as money which my family desperately needed at that time.

40. I knew that we would not be able to redeem the property, and was being sought out in an aggressive manner by Mr. Novak.

41. In consideration of the aforementioned factors, we agreed to Mr. Novak's terms.

42. The series of transactions which took place include the payment by Novak to Blaker of the full redemption price plus an additional two thousand dollars, the sale of our right of redemption in the property located at 19370 Mulligan Creek Rd. to Michael J. Novak, and execution and delivery of a Warranty Deed for the property to Anna K. Novak.

43. Mr. Novak structured the transaction to be in his wife's name, Anna K. Novak.

44. We did not then, and do not now, have any connection to Anna K. Novak, whom we have never spoken to or met.

45. Mr. Novak did not ask for any documentation, other than the signed Agreement to Purchase Real Estate and signed Warranty Deed. (A copy of the Warranty Deed has been sent to the Trustee.)

46. Mr. Novak, a self-professed real estate developer, did not conduct a title search.

47. At the time that we were approached by Novak following foreclosure of the property located at 19370 Mulligan Creek Rd., we relied upon the correspondence we previously received from Trott Law, indicating that the junior PNC lien would be eliminated upon completion of the foreclosure.

48. In June 2017, Anna K. Novak alleged that she was taken by surprise upon her receipt of an e-mail from an attorney for PNC Bank, advising that we had taken out a second mortgage through PNC, which was recorded in Presque Isle County Records.

49. Anna K. Novak further alleged that she attempted to preserve her interest in the property by negotiating the amount of the lien owing to PNC, which resulted in her alleged payment of $130,000.00 to PNC in order to own the property free and clear.

50. Anna K. Novak then sued us in the Oakland County Circuit Court in November, 2017, seeking an award of the $130,000.00 which she allegedly paid.

51. I, Camillia, was harassed over the phone and via e-mail by Anna K. Novak's attorney during the course of that proceeding. (A copy of one such e-mail has been sent to the Trustee.)

52. We were forcefully advised to enter into a Settlement Agreement with Anna K.

Novak, the terms of which are bound by a confidentiality agreement contained therein.

53. We did not draft this agreement, nor did we have effective representation during the course of that matter.

54. After entering into the Settlement Agreement, we attempted to comply with it's terms.

55. We soon found ourselves struggling to maintain our regular household expenses in light of our significant medical bills, which led to the filing of our Chapter 7 case.

{00078551.DOCX 3 }

18-55902-mar    Doc 20    Filed 12/28/18    Entered 12/28/18 11:20:08    Page 8 of 9

We assert that the above information is true and correct under penalty of perjury.

Dated: 12/20/18   /s/ William M. Hoffhiens

Dated: 12/20/18   /s/ Camillia Hoffhiens


Subscribed and sworn to before me
This 20th day of December 2018

/s/ _____, Notary Public
Acting in Oakland County, Michigan
My commission expires:

STEPHANIE K. TRAVIS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires Dec. 26, 2018
Acting in the County of Oakland

{00078551.DOCX }